## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AMANDA SHAHAN, individually and**<br>**on behalf of others similarly situated,** | ) ) | |
| | ) | **Case No. 2:22-cv-01246-JDC-KK** |
| **Plaintiff,** | ) ) | **JURY DEMAND** |
| **v.** | ) ) | |
| **ALLSTATE VEHICLE AND PROPERTY**<br>**INSURANCE COMPANY,** | ) ) ) | |
| **Defendant.** | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW Plaintiff Amanda Shahan, individually and on behalf of others similarly situated ("Plaintiff"), pursuant to Fed. R. Civ. P. 15(a)(1)(A), and for her First Amended Class Action Complaint against Allstate Vehicle and Property Insurance Company ("Allstate"), states and alleges the following:

### OVERVIEW OF CLAIMS

1.     This is a class action case arising out of a dispute between policyholders and a property insurer. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be "depreciated" by Allstate when Allstate calculates its actual cash value ("ACV") payment obligations for structural property losses.

2.     This lawsuit does not contest that labor used to make a building product (such as a shingle or electrical outlet) or labor used to construct a building (such as a roofer or electrician) become "embedded" within the building product or home and can be depreciated as part of an ACV calculation.

3.      Future labor is at issue because, pursuant to Allstate's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to a damaged structure. In contrast to ACV coverage, replacement cost value coverage ("RCV") payments are made retrospectively, after repairs have been completed.

4.      Property insurers within the Allstate insurance group, including Allstate, have faced repeated lawsuits around the country concerning their practice of depreciating future labor from ACV payments. *See, e.g.*, *Perry, et al. v. Allstate Indem. Co.*, 1:16-cv-01522 (N.D. Ohio); *Ferguson-Luke v. Allstate Property & Casualty Ins. Co.*, 1:20-cv-00807 (N.D. Ohio); *Maniaci v. Allstate Ins. Co.*, 1:20-cv-00613 (N.D. Ohio); *Lado v. Allstate Vehicle and Prop. Ins. Co.*, 1:20-cv-01417 (N.D. Ohio); *Huey v. Allstate Vehicle and Prop. Ins. Co.*, 4:19-cv-00153 (N.D. Miss.); *Hester v. Allstate Vehicle & Prop. Ins. Co.*, 20L0462 (St. Clair County, Illinois); *Mitchell et al. v. Allstate Vehicle Prop. Ins. Co., et al.,* 2:21-cv-00347 (S.D. Ala.); *Thaxton v. Allstate Indem. Co.*, 2020L000908 (Madison County, Illinois).

5.      During the times relevant herein, most property insurers in Louisiana did not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers in Louisiana do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld, *i.e.*, a form that expressly uses the terms "labor" and "depreciate" or "depreciation" and addresses the issue within the text of the policy or endorsement. Others, such as Allstate, withhold future labor as depreciation even under policies that do not contain such provisions. At times relevant herein, the Allstate

policies at issue did not include any provision or language that allow it to withhold labor as depreciation when making ACV payments for structural loss claims.

6.     The issue presented is a question of law (whether labor may be depreciated in the absence of a labor depreciation permissive form) and was recently addressed by the Fifth Circuit Court of Appeals in *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law).

7.     In *Mitchell*, the Fifth Circuit held that both the insurer and insured's interpretations of the otherwise undefined phrase "actual cash value" were reasonable, thus the policy was ambiguous and must be construed in favor of the insured. *Id.* at 703, 707.

8.     The Fifth Circuit's holding in *Mitchell* is dispositive as to Louisiana class members because Louisiana law and Mississippi law are materially identical as it relates to the contractual interpretation issues before the Court.

9.     This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiff and putative class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

10.     Plaintiff is an adult resident of the Parish of Calcasieu, Louisiana. Amanda Shahan is a resident of the Parish of St. Martin, Louisiana. At all times relevant hereto, Plaintiff owned the dwelling and other structures located at 1000 Elizabeth Street, Westlake, Louisiana 70669 (the "Shahan Property").

11.     Allstate is organized under the laws of Illinois with its principal place of business in Northbrook, Illinois. Allstate is authorized to sell property insurance policies in the State of Louisiana, including within this judicial district.

12. Allstate engaged in the contractual breaches described herein in a uniform matter and pursuant to a uniform policy. Property insurers within the Allstate insurance group collectively operate a centralized claims adjustment operation in which their adjusters work on claims in various states for multiple different entities, including Allstate, using the same policies and procedures that breached the policy provisions at issue in this case for adjusting and paying insurance claims.

13. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings contractual and declaratory relief claims on behalf of herself and a putative class of Allstate property insurance policyholders who are similarly situated.

14. The events giving rise to the individual claims asserted by Plaintiff that are the subject of this action occurred in the Western District of Louisiana. Allstate has insurance agents in the Western District of Louisiana for the conduct of its usual and customary business, including the sale and servicing of property insurance policies and the handling and payment of claims associated with those policies of insurance.

15. Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Allstate because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Louisiana.

## FACTS

### A.    Introduction and Scope of Lawsuit

17.    Allstate sells property insurance coverage for, *inter alia*, homes and buildings in the State of Louisiana. This lawsuit only concerns first-party insurance coverage for structures located in the State of Louisiana.

18.    This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

19.    Further, this lawsuit only concerns claims wherein Allstate itself accepted coverage and then Allstate chose to calculate its ACV payment obligations exclusively pursuant to the replacement cost less depreciation methodology.

### B.    The Shahan Insurance Policy and Loss

20.    Plaintiff contracted with Allstate for an insurance policy providing coverage for certain losses to the Shahan Property. The policy number is 810988446 (the "Shahan Policy").

21.    Shahan paid premiums to Allstate in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

22.    On or about August 7, 2020, the Shahan Property suffered loss and damage as a result of Hurricane Laura. The loss and damage was covered by the Shahan Policy. To remedy the damage to the Shahan Property, future replacement and/or repair labor and materials would have to be incurred.

23.    Plaintiff timely submitted a claim to Allstate requesting payment for the covered loss.

24. Allstate determined the loss to the Shahan Property was covered by the terms of the Shahan Policy.

25. Allstate calculates its ACV payment obligations to its policyholders for structural damage loss by first estimating the future costs to repair or replace the damage with new materials (the RCV), and then Allstate subtracts the estimated depreciation.

26. The Shahan Policy, and the other property forms at issue in this pleading, do not permit the withholding of future repair labor as depreciation as described below. In contrast with the Shahan Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form."

27. The Shahan Policy does not contain a labor depreciation permissive form.

**C.    Allstate's Calculation of Plaintiff's ACV Payment**

28. In adjusting Plaintiff's claim, Allstate affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate her loss and to make its ACV payment. Allstate did not use any other methodology to calculate Plaintiff's ACV payment.

29. Allstate did not calculate any portion of Plaintiff's loss by reference to or analysis of any alleged increase or decrease in the market value of her home, or the market value of any portion of her property.

30. Allstate did not conduct an appraisal of Plaintiff's loss.

31. Allstate did not conduct an appraisal of the Shahan Property.

32.     Allstate has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the "replacement cost less depreciation" methodology.

33.     Soon after the Plaintiff's loss, Allstate sent adjusters to inspect the damage and estimate ACV.

34.     Allstate used standard commercially-available computer software to estimate its RCV, depreciation, and ACV calculations. The software used to calculate the payment to Plaintiff is called Xactimate®.

35.     As set forth in the written Xactimate® estimate provided to Plaintiff, Allstate determined Plaintiff had suffered a covered loss to the Shahan Property. The Xactimate® estimate generated by Allstate included the estimated cost of materials and future labor required to complete the repairs (the RCV).

36.     In calculating its ACV payment obligations to Plaintiff, Allstate utilized Xactimate® to determine the depreciation to subtract from the RCV.

37.     Plaintiff was underpaid on her ACV claim and deprived of the use of her money from the time she should have received full ACV payment until the date she actually recovered the wrongfully withheld amounts, as more fully described below.

**D.     Allstate's Practice Of Withholding Future Labor As Depreciation**

38.     For Plaintiff and putative class members, Allstate used Xactimate® software to calculate ACV payments. Xactimate® is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and is also used to calculate depreciation to determine ACV payments under the "replacement cost less depreciation" methodology.

39.     The only methodology used by Xactimate® to calculate ACV payments for structural damage is the "replacement cost less depreciation" methodology.

40.     Allstate unfairly manipulates Xactimate® to withhold future labor from ACV payments.

41.     Xactimate® generates its estimate prices from its ongoing fair market pricing research. Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

42.     When adjusting property insurance claims with Xactimate®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the roofing, siding, or other damaged building materials.

43.     The Xactimate® software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

44.     Xactimate® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the below screenshot from the Xactimate® program allows the software user to select or de-select "Depreciate Non-Material," "Depreciate Removal" or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



45.     When Allstate calculated Plaintiff's ACV benefits owed, Allstate withheld costs for both the materials and future labor required to repair the Shahan Property as depreciation, even though labor does not depreciate in value over time. Allstate withheld labor costs as depreciation throughout its ACV calculations as depreciation.

46.     In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

47.     Allstate's withholding of future labor costs as depreciation resulted in Plaintiff receiving payment in an amount less than what she was entitled to receive under her policy. Allstate breached its obligations under the policy by improperly withholding the future cost of labor as depreciation.

48.     Without expert assistance, Plaintiff herself cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the respective estimate.

49.     While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a replacement cost less depreciation methodology.

50.     Allstate's failure to pay the full cost of the labor necessary to return Plaintiff's structure to the *status quo ante* left Plaintiff under-indemnified and underpaid for her loss.

51.     Future labor which has not yet been incurred, by its nature, does not depreciate, and an insurer therefore may not withhold future labor as depreciation.

52.     Allstate materially breached its duty to indemnify Plaintiff by withholding future labor costs from ACV payment as depreciation, thereby paying Plaintiff less than she was entitled to receive, including but not limited to depriving Plaintiff of the time use of money resulting from the periods of labor withholding in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

53.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

54.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of herself and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

55.     The proposed class Plaintiff seeks to represent is tentatively defined as follows:

All Allstate policyholders (or their lawful assignees) who made a:

(1) a structural damage claim for property located in the State of Louisiana; and

(2) for which Allstate accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment.  The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form.

56.     Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Allstate and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

57.     Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

58.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across the State of Louisiana have been damaged by Allstate's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Allstate or from information readily available to Allstate.

59.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

60.     Allstate has acted on grounds generally applicable to the proposed class in that Allstate has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Allstate will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

61.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.     Whether the applicable policy language allows the withholding of future labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

b.     Whether applicable policy language is ambiguous concerning the withholding of future labor costs in calculating ACV payments, and if so, how the insurance policies should be interpreted;

c.     Whether the withholding of future labor costs in the calculation of ACV payments breaches the applicable insurance policies;

12

d. Whether Allstate has a custom and practice of withholding future labor costs in the calculation of ACV payments;

e. Whether Plaintiff and members of the proposed class have been damaged as a result of the withholding of future labor costs in the calculation of ACV payments; and

f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

62. Plaintiff's claim is typical of the claims of the proposed class members, as they are similarly affected by the customs and practices alleged herein. Further, Plaintiff's claim is typical of the claims of the proposed class members because the claim arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

63. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiff reserves the right to have unnamed class members join them in seeking to be a class representative.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

65. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

66. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed

class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

67.     Class certification is further warranted because Allstate has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

68.     Plaintiff may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT (Class Action)

69.     Plaintiff restates and incorporates by reference all preceding allegations.

70.     Allstate entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Allstate and Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

71.     These policies of insurance are binding contracts, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

72.     Allstate drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV

payments for structural loss when Allstate is calculating ACV under a replacement cost less depreciation methodology.

73.     In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiff and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policy.

74.     Allstate breached its contractual duties to pay Plaintiff and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

75.     Allstate's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

76.     In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest for all periods of withholding as may be allowed by law.

**COUNT II**
**DECLARATORY JUDGMENT AND RELIEF (Class Action)**

77.     Plaintiff restates and incorporates by reference all preceding allegations.

78.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

79.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

80.     Plaintiff and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

81.     Plaintiff seeks, individually and on behalf of the proposed class, a declaration that the applicable insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

82.     Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

83.     Plaintiff and members of the proposed class have and will continue to suffer injuries.

## COUNT III
## Individual Claims

84.     Plaintiff restates and incorporates by reference all preceding allegations.

85.     The Policy issued by Allstate to Plaintiff is a binding contract and is supported by valid consideration.

86.     Allstate is in total, material breach of the Policy, and Allstate is liable to Plaintiff for the maximum amount allowed by the Policy for the direct physical loss and damage caused Hurricane Laura and other loss, damage, and expense that is covered by the Policy, less the applicable deductible and payments previously made. Specifically, Allstate breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff as a result of the subject storm as required by the terms of the Shahan Policy and applicable law. To date, Allstate has failed to make full payment to Plaintiff for her covered losses.

87.     After the hurricane, there was no electricity at the Shahan Property, which was rendered uninhabitable by the damage from the storm. Plaintiff traveled back and forth daily from Houston to Westlake until the Shahan Property could be secured. Allstate has not adequately compensated Plaintiff for any additional living expenses.

88.     On or about September 8, 2020, adjuster Eriberto Rojas inspected the Shahan Property on behalf of Allstate and documented damages to the dwelling, other structures, and personal property, but after applying the Shahan Policy's deductible, Allstate (via Mr. Rojas' estimate) allowed Plaintiff only $8,154.57, $16,021.38, and $330.60 for her substantial dwelling, other structures, and personal property losses, respectively.

89.     Mr. Rojas' inspection of the Shahan Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

90.     Plaintiff was unable to make meaningful repairs to the Shahan Property with the meager proceeds allowed by Allstate and promptly put Allstate on notice of its deficient claims handling. In order to mitigate her damages and prevent further damage to the Shahan Property, Plaintiff tarped the Shahan Property's damaged roof.

91.     On or about October 1, 2020, Complete Adjusting Services, LLC ("CAS") inspected the Shahan Property on behalf of Plaintiff and created an estimate of damages documenting $111,017.71 in damages to the dwelling, $1,300.00 in damages to other structures, and $26,320.25 in damages to contents. On October 29, 2020, a demand for the release of unconditional tenders was sent to Allstate, along with the CAS estimate and photographs demonstrating the loss.  This submission constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

92.     On or about November 11, 2020, adjuster Donald McMillan reinspected the Shahan Property on behalf of Allstate and documented damages to the dwelling, other structures, and personal property, but applying the Shahan Policy's deductible, Mr. McMillan additionally

18

allowed Plaintiff only $21,851.12, $51.00, and $169.40 for her substantial dwelling, other structures and personal property losses, respectively. On or around January 27, 2021, Allstate tendered a supplemental payment of $5,811.94 to Plaintiff for her dwelling and other structures. Additionally, on or around April 12, 2021, Allstate finally tendered $34,381.17 to Plaintiff for her personal property losses.

93.     To date, Allstate has refused to make any additional payments to Plaintiff other than those outlined herein. As a result of Allstate's failure to timely and adequately compensate Plaintiff for her substantial losses, the Shahan Property remains in a state of disrepair.

94.     Upon information and belief, Allstate engaged in the following actions toward Plaintiff: (a) Allstate purposefully and/or negligently failed to timely and adequately compensate Plaintiff for her loss, after receiving satisfactory proof of loss; (b) Allstate purposely and/or negligently misrepresented to Plaintiff the terms and conditions of the Shahan Policy; (c) Allstate conducted the investigation and claims handling for Plaintiff's claims in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973; and (d) Allstate purposely or at least negligently failed to include adequate general contractor's overhead and profit in its estimates of damages.

95.     Plaintiff has incurred or will incur additional expenses in repairing the Shahan Property as a result of Allstate's failure to timely compensate her for her substantial and covered losses. Additionally, Plaintiff has incurred or will incur additional living expenses as a result of the damages caused to the Shahan Property by Hurricane Laura, including those additional living expenses that will be incurred during the repair of the Shahan Property.

96.     In addition to and independent of the allegations in this Complaint concerning labor depreciation, Allstate breached its contract with Plaintiff by: i) failing to timely tender all insurance proceeds as required by the terms of the Shahan Policy; ii) failing to timely tender adequate insurance proceeds after having receiving satisfactory proof of a covered loss; iii) purposely and/or negligently misrepresenting to Plaintiff the terms and conditions of the Shahan Policy; iv) failing to conduct the claims handling for Plaintiff's claim in good faith and with fair dealing; and v) failing to include adequate overhead and profit in its estimates of damages. Plaintiff has suffered and will continue to suffer damages as a result of Allstate's breach of the Shahan Policy.

97.     The actions and/or inactions of Allstate in failing to timely and adequately compensate Plaintiff for her covered losses under the Shahan Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making Allstate liable for statutory bad faith penalties. Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973. "[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. § 22:1973. La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

98.     Allstate is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Plaintiff adequate payment in connection with her claim, despite having received satisfactory proof

of loss following its own inspection of the Shahan Property and following its receipt of independent proofs of loss from CAS.

99.     Allstate's misrepresentation of the relevant facts and/or the terms of the Shahan Policy was in bad faith. Allstate's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith. Allstate's failure to pay timely for damages it knew, or should have known, existed at the time it received the CAS estimate was in bad faith. Allstate's failure to include adequate overhead and profit in its estimates of damages was in bad faith. Allstate's handling of Plaintiff's claim was in bad faith, and Allstate is liable to Plaintiff for its bad faith.

100.    Independent and separate and apart from the labor depreciation claims alleged herein, Plaintiff has incurred the following, non-exclusive damages as a result of Allstate's breaches of contract, bad faith claims adjusting, and other bad acts: (a) diminution of the value of the Shahan Property; (b) replacement cost value for the cost to repair or replace the damage caused by Hurricane Laura or such other amounts to which Plaintiff may be entitled under the Policy; (c) reimbursement for personal repairs at the Shahan Property; (d) costs for personal property manipulation, cleaning, repair, and/or replacement; (e) additional living expenses; (f) mental anguish; (g) penalties delineated in La. R.S. §§ 22:1892 and 22:1973; and (h) attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.      Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2.      Enter a declaratory judgment, declaring that Allstate's withholding of future labor costs as depreciation is contrary to and breaches the insurance policies issued to Plaintiff and members of the putative class;

3.      Enter a declaration, and any preliminary and permanent injunction and equitable relief against Allstate and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4.      Enter an order that Allstate specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5.       Award compensatory damages for all sums withheld as non-material depreciation as defined above, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6.      Award compensatory damages and penalties to Plaintiff, individually, as outlined in ¶ 100 above;

7.      Award attorney's fees, costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8.      Pre- and Post-Judgment interest; and

9.      Grant such further and additional relief as the Court deems necessary and proper.

**RESPECTFULLY SUBMITTED:**

_____
Lauren E. Checki, La. Bar No. 31659
Galen M. Hair, La. Bar. No. 32865
Ashley Unsworth Schmidt, La. Bar No. 36005
**HAIR SHUNNARAH TRIAL
ATTORNEYS, LLC.
d/b/a INSURANCE CLAIM HQ
d/b/a INSURANCE CLAIM
LAWYERS, INC.**
3540 S I-10 Service Rd W, Ste. 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
checki@hairshunnarah.com
hair@hairshunnarah.com
schmidt@hairshunnarah.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this ___ **day of May, 2022**, a copy of the foregoing First Amended Class Action Complaint was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record. I also certify there are no known manual recipients.

_____/s/Lauren E. Checki_____
LAUREN E. CHECKI