## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**AMANDA SHAHAN**                                           **CASE NO.  2:22-CV-01246**

**VERSUS**                                                          **JUDGE JAMES D. CAIN, JR.**

**ALLSTATE VEHICLE & PROPERTY**                **MAGISTRATE JUDGE KAY**
**INSURANCE CO**

### MEMORANDUM RULING

Before the Court is "Defendant's Rule 12(b)(6) Motion to Dismiss and Rule 23(d)(1)(D) Motion to Strike Class allegations" (Doc. 15) wherein Defendant Allstate Vehicle and Property Insurance Company ("Allstate") moves to dismiss all of Plaintiff, Amanda Shahan's claims with prejudice and to strike the class allegations from the putative Class Action Complaint.

### INTRODUCTION

On or about August 27, 2020, Hurricane Laura made landfall near Lake Charles. During the relevant time period, Allstate issued a replacement cost homeowners insurance policy, which covered Plaintiff's property against perils including hurricanes. [1] In her Complaint, Plaintiff alleges that Allstate did not sufficiently compensate her for additional living expenses, and for damages to her dwelling, structures and personal property losses.

Plaintiff asserts a breach of contract claim as well as claims for penalties and attorney fees pursuant to Louisiana Revised Statutes 22:1973 and 22:1892. Specifically,

---

[1] Complaint, ¶ 6, Doc. 1.

for this Motion, Plaintiff claims that Allstate breached the policy by wrongfully withholding amounts due to her for Actual Cash Value ("ACV") claims by depreciating labor when calculating the ACV of the damaged insured property.

## RULE 12(b)(6) STANDARD

Because the grounds for dismissal under Rule 12(b)(6) result in dismissal of the claims at issue against both defendants, and defective service could still be cured, the court will first analyze the grounds asserted under Rule 12(b)(6).

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Plaintiff's policy is a replacement cost insurance policy where Plaintiff will receive the actual cash value ("ACV") of her insured property when it is damaged or destroyed by a covered peril. ACV is calculated by taking the repair/replacement which includes both material and labor and then deducting for depreciation. If no repairs or replacements are made the insured is paid ACV.  If the repairs or replacements are made, Allstate reimburses the insured for the depreciation deduction.

Plaintiff alleges that when Allstate calculates the amount of the ACV, it should only depreciate the material costs, but not the labor costs.  Plaintiff argues that the ACV should include all labor costs, even prior to the repair/replacement being made. In other words, Plaintiff challenges Allstate's refusal to pay 100% of the future labor costs, without any depreciation, even if Plaintiff does not replace or repair the damaged property.

The policy provides as follows:

**How We Pay for Loss**

[P]ayment for covered loss will be one or more of the following methods:

. . . .

b) Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash basis.  This means there may be a deduction for depreciation.  Payment will not exceed the Limit of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) . . . below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement . . . .**[W]e** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged destroyed or stolen covered property within 180 days of the actual cash value payment. . . .
Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) The replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;

2) The amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or

3) The Limit of Liability applicable to the **building structure(s)** as shown on the Policy Declarations[.] . . .

. . . .

Building structure Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to the **building structure** and the smallest of 1), 2), or 3) above.[2]

Plaintiff bases her argument on the fact that "depreciation" is not defined in the policy.  Plaintiff argues that because "labor" is an intangible, this component should be dissected out of the ACV calculation and not be depreciated. Plaintiff relies on numerous lower court rulings, appellate rulings, and descriptions and/or opinions of labor depreciation in other jurisdictions that have ruled adverse to Allstate—to not depreciate labor costs in calculating ACV.

Plaintiff suggests that Allstate's interpretation of ACV leaves the insured in a worse condition than before the loss. *See Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 706 (5th Cir. 2020) (applying Mississippi law); *Hicks v. State Farm Fire & Cas. Co.*, 751

---

[2] Defendant's exhibit A, pp. 40-41.

Fed. App'x. 703, 706 (6th Cir. 2018) (the cost of labor to install a new garage would be [the] same as installing a garage with 10-year old materials."); *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675, 678-79 (Ark. 2013) (proper indemnity requires giving insured the cash value of depreciated shingles and the cost of their installation).

Allstate argues that the parties' reasonable expectation is that labor costs for future repair would be paid when the labor is incurred and paid to the laborer, after the loss. Plaintiff disagrees and opines that it is illogical to expect any policyholder to interpret Allstate's policy in such a manner. Citing *e.g., Franklin v. Lexington Ins. Co.*, ___S.W.3d ___ 2022 WL 2310031, at *12 (Mo. Ct. App. June 28, 2022). Plaintiff argues that: (1) ACV is indemnity coverage intended to return the policyholder back to the *status quo ante* which could never be accomplished if repair labor is withheld; and (2) Allstate itself always pays at least a portion of the repair labor up front with its ACV payments.

The Court disagrees with Plaintiff and respectfully disagrees with those courts and/or opinions cited by Plaintiff.

"[A]n insurance policy is a contract between the parties and should be construed using general rules of interpretation of contracts set forth in the Civil Code." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 588–589 (La. 2007). "According to those rules, the responsibility of the judiciary interpreting insurance contracts is to determine the parties' intent." *Id*. at 589 (*citing* Louisiana Civil Code article 2045). "Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself." *Id.* (*citing* Louisiana Civil Code article 2046.). "In asserting the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary

and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning." *Id.* (*citing* Louisiana Civil Code article 2047).

"An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions." *Id.* "One provision of the contract should not be construed separately at the expense of disregarding other provisions." *Id.* "Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Id.*

"When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretations may be made in search of the parties' intent and courts must enforce the contract as written." (*citing* Louisiana Civil Code article 2046). "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.* Significantly, a contractual term is "not automatically considered ambiguous merely because it is not defined in the contract." *Sumner v. Mathes*, 52 So.3d 931, 935 (La. Ct. App. 4 Cir. 2010).

If, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provisions is generally construed against the insurer and in favor of coverage. *Sims*, 956 So.2d at 589-90. A policy is only ambiguous "if the ambiguous policy provision is susceptible to two or more reasonable interpretations." *Id.* at 590. "The fact that a term is not defined in the policy

itself does not alone make that term ambiguous." *Burmaster v. Paquemines Parish Gov't*, 64 So.3d 312, 317 (La. Ct. App. 4 Cir. 2011).  "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003).  "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." Louisiana Civil Code article 2048.

"Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *Louisiana Ins. Guar Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994).

Plaintiff attempts to create an ambiguity where none exists. "The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent." *Sims,* 956 So.2d 589. To be clear, the language of the policy could not be interpreted to pay the insured for all future labor costs, which have not yet, nor may they ever be incurred. This would be an absurd and illogical interpretation of the policy.  Simply put, depreciation is the actual value of the damaged property reduced by a time factor depending upon the life expectancy of the property.  ACV is the replacement of that property less the depreciation.  Plaintiff's attempt to dissect and remove components of depreciation distorts the plain, ordinary and generally prevailing meaning of depreciation. As such, the Court finds that Plaintiff's claims for

additional damages for future labor costs to any covered, damaged property must be dismissed.

*Motion to Strike Class Allegations*

Allstate moves to strike from the complaint any and all class action allegations. Based on this Court's conclusion that Plaintiff's claim for future labor costs should be dismissed, the Court also finds that the complaint fails to plead the minimum facts necessary to establish the existence of a class under the mandates of Rule 23 of the Federal Rules of Civil Procedure. *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809 at *2 (E.D. La. Mar. 6, 2007). As such, any such allegations will be stricken.

## <u>CONCLUSION</u>

Allstate moves to dismiss the complaint in its entirety as well as to strike the class allegations.  The Court will grant Allstate's Motion to Dismiss as to Plaintiff's claims for future labor costs, and the Court will grant Allstate's Motion to Strike the Class allegations. However, the Court will permit Plaintiff to amend her complaint to assert a breach of contract claim, if any she has, consistent with the Court's ruling.

**THUS DONE AND SIGNED** in Chambers this 29th day of July, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**